| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>STEPHEN M. PACKMAN (SP1589)<br>DOUGLAS G. LENEY (DL9012)<br>ARCHER & GREINER<br>A Professional Corporation<br>One Centennial Square<br>Haddonfield, NJ 08033-0968<br>Tel: (856) 795-2121<br>Fax: (856) 795-0574<br>*Attorneys for the Liquidation team of Zhejiang Topoint Photovoltaic Co., Ltd., as Bankruptcy Administrator of the Debtors and the Topoint Group* | |
| In re:<br><br>ZHEJIANG TOPOINT PHOTOVOLTAIC CO., LTD.,<br><br>    Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14- |
| In re:<br><br>ZHEJIANG JIUTAI NEW ENERGY CO., LTD.,<br><br>    Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14- |
| In re:<br><br>ZHEJIANG YUTAI SOLAR MATERIALS CO., LTD.,<br><br>    Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14- |
| In re:<br><br>ZHEJIANG WILLSOLAR PHOTOELECTRIC MATERIALS CO., LTD.,<br><br>    Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14- |

**VERIFIED PETITION PURSUANT TO 11 U.S.C. §§ 105(a), 1504, 1515, 1517, 1519, 1520, AND 1521 FOR ENTRY OF AN ORDER RECOGNIZING FOREIGN MAIN PROCEEDING AND GRANTING FURTHER <u>RELIEF AND ADDITIONAL ASSISTANCE</u>**

The liquidation team of Zhejiang Topoint Photovoltaic Co., Ltd., led by Yueming Zhang ("**Zhang**") is the court-appointed bankruptcy administrator (the "**Bankruptcy Administrator**") and authorized foreign representative of (i) Zhejiang Topoint Photovoltaic Co., Ltd. ("**Topoint**"), (ii) Zhejiang Jiutai New Energy Co., Ltd. ("**Jiutai,**"), (iii) Zhejiang Yutai Solar Materials Co., Ltd. ("**Yutai**"), and (iv) Zhejiang Willsolar Photoelectric Materials Co., Ltd. ("**Willsolar**," and together with Topoint, Jiutai, and Yutai, collectively, the "**Debtors**" or "**Topoint Group**") in certain proceedings (the "**Chinese Proceeding**") pending before the People's Court of Haining City, Zhejiang Province, (2014) No. Jiahaipo(yu)zidi No. 4 (the "**Chinese Court**"), pursuant to Article 2, Point 2 of Article 7, Point 1 of Article 70 and Article 71 of the "Enterprise Bankruptcy Law of P.R.C." and Article 132 of "Civil Procedure Law of P.R.C." (the foregoing as designated portions of "**Chinese Bankruptcy Law**"). In its capacity as the foreign representative in respect of the Chinese Proceeding, the Bankruptcy Administrator respectfully submits this Petition (the "**Petition**") for the entry of an Order pursuant to, *inter alia*, sections 105(a), 1504, 1515, 1517, 1519, 1520, and 1521 of Chapter 15 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), granting recognition of the Chinese Proceeding as a "foreign main proceeding" and the Bankruptcy Administrator as the "foreign representative" in respect of the Chinese Proceeding, and granting certain other related relief in aid thereof descrbied herein. In support of the Chapter 15 Petition, the Bankruptcy Administrator respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Section 1501 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1410(1) and (3) as, upon information and belief, there exist substantial assets of the Debtors in the United States located in this judicial district.

3. The statutory predicates for the relief requested herein are Sections 105(a), 1504, 1515, 1517, 1519, 1520, and 1521 of the Bankruptcy Code.

## II. BACKGROUND

4. The facts and documents relevant to this matter are as set forth in the accompanying Declaration of Jiangang Ou, as authorized designee and signatory of the Bankruptcy Administrator (the "**Ou Declaration**"), which is annexed hereto as Exhibit "**A**."[1] Topoint is engaged principally in the development, manufacturing, and marketing of photovoltaic solar panels in China for sale and export to international markets, including the United States. Jiutai is engaged principally in the marketing of such solar panels. Manufacturing of the Topoint Group's products is generally conducted from its facilities located in the Zhejiang Province of the People's Republic of China ("**PRC**" or "**China**").

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Ou Declaration. A copy of the Resolution appointing Ou as Authorized Signatory and Officer on behalf of the Bankruptcy Administrator is annexed hereto as Exhibit "E."

A. **Corporate Structure**

5. Topoint is a company registered under the laws of the PRC on September 13, 2006, maintaining a principal address at Industrial Zone No. 8, Huangwan Town, New Jianshan District, Haining City, Zhejiang Province of the People's Republic of China. Topoint is a limited-share company founded upon investment by 11 corporate entities and 15 individual shareholders. Topoint has a registered capital of RMB 366.44 million yuan[2], and maintains an interest in the following wholly-owned subsidiaries:

(a) Zhejiang Jiutai New Energy Co., Ltd. (defined hereinabove as "Jiutai"), a company registered in the PRC on February 6, 2009, and maintaining a principal address at Industrial Zone No. 9, Huangwan Town, New Jianshan District, Haining City, Zhejiang Province of the People's Republic of China. Jiutai is involved in the sale of solar panels.

(b) Zhejiang Yutai Solar Materials Co., Ltd. (defined hereinabove as "Yutai"), a company registered in the PRC on October 15, 2008, and maintaining a principal address at 72-101 Anjiang Rd., New Jianshan District, Haining City, Zhejiang Province of the People's Republic of China. Yutai is involved in the manufacturing and sales of silicon wafers, photovoltaic cells, and solar panels.

(c) Zhejiang Willsolar Photoelectric Materials Co., Ltd. (defined hereinabove as "Willsolar"), a company registered in the PRC on June 28, 2007, and maintaining a principal address at Room 106, Xianxia Road No. 122, Huangwan Town, New Jianshan District, Haining City, Zhejiang Province of the People's Republic of China. Willsolar is involved in importing photovoltaic production equipment and parts and technology, exporting silicon-based solar cells and modules, and production of poly-silicon and silicon ingots and wafers.

---

[2] Equivalent to approximately US$59.1 million.

B.   **Assets in the United States**

6.   The Debtors' assets in the United States consist primarily of photovoltaic solar panels ("**Solar Panels**"), which are presently stored in one or more warehouse facilities located at 450 North Laurel Street in Bridgeton, New Jersey, owned by CDL Realty LLC (the "**Warehouse**"). Upon information and belief, there are presently in excess of 200,000 Solar Panels totaling approximately 31 million watts (Megawatts or MW) in storage in the Warehouse.

7.   In addition to the Solar Panels, the Debtors may maintain certain claims and causes of action, including, but not limited to, claims and causes of action relative to Solar Panels which are no longer in the Warehouse (collectively, all claims and causes of action belonging to the Debtors may be referred to hereinafter as "**Claims**"). For purposes of this Petition, all of the Debtors' assets in the United States, including, but not necessarily limited to, the Solar Panels and the Claims may be referred to hereinafter as the "**US Assets**."

C.   **Financial Difficulties and Chinese Proceeding**

8.   The Debtors' business suffered financial difficulties stemming from the wake of the 2008 global economic crisis and subsequent events. More specifically, after 2008, China targeted the solar industry as a growing sector and ripe for government stimulus and subsidy. Global demand for renewable energy sources such as solar power were increasing, fueled in part by governmental incentives for adopting such energy sources.

9.   As a result, the Chinese solar manufacturing industry boomed, and companies ramped up their borrowing in order to fund their investments. "China's solar module manufacturing capacity grew from less than 5 gigawatts in 2007 to a predicted 50 gigawatts at

5

the end of [2012] (China's 2011 capacity came in at just under 40 gigawatts), more than double the rest-of-world (RoW) total."[3]

10. However, global demand for solar module installations failed to keep pace with the massive production put out by Chinese companies over the past several years. In addition to production outpacing basic demand, other factors began to influence demand for Chinese solar modules in Europe and the United States, such as the imposition of "countervailing duties" and "anti-dumping tariffs" on the importation of foreign solar products, in an effort to combat predatory pricing advantages.

11. As a result, many of China's larger solar firms faced the possibility of bankruptcy and/or consolidation, including LDK Solar, Yingli Solar, and Suntech Power Holdings. Domestically, the downturn in the solar industry saw, among other companies, Solyndra[4] and Evergreen Solar, Inc.[5] file for Chapter 11 bankruptcy protection.

12. The industry may now be turning a corner, thanks to increasing demand starting to "catch up" to the prior glut of overproduction. "Climbing demand for solar panels is countering a global oversupply of production capacity that erased profits across the industry and bankrupted more than a dozen companies."[6] "Developers installed 37.5 gigawatts of panels worldwide last year, up 22 percent from 2012, and that figure may increase as much as 39

---

[3] James Parker, *"Lights Out for China's Solar Power Industry?,"* The Diplomat Online (December 8, 2012), http://thediplomat.com/2012/12/lights-out-for-chinas-solar-power-industry/

[4] In re Solyndra, LLC, Chapter 11, Case No. 11-12799-MFW (Bankr. D. Del.).

[5] In re Evergreen Solar, Inc., Chapter 11, Case No. 11-12590-MFW (Bankr. D. Del.).

[6] Ehren Goossens, *"Solar Makers Shift to Profit as Demand Eases Oversupply,"* Bloomberg Online (March 18, 2014), http://www.bloomberg.com/news/2014-03-18/solar-makers-shift-to-profit-as-demand-eases-oversupply.html

percent this year, according to data compiled by Bloomberg."[7] "The largest solar-panel maker Yingli Green Energy Holdings Co. (YGE) said yesterday that it expects to be profitable in the third quarter [of 2014]."[8]

13. In the Debtors' case, the Chinese Proceeding was commenced on November 5, 2013, by applicant Haining City Rural Credit Cooperatives ("**HCRCC**"). HCRCC applied for the restructuring of the Topoint Group in light of the Topoint Group's expected inability to meet upcoming payment obligations on its credit facility. The Chinese Court found that HCRCC held a maturing financial debt of RMB 112.226 million yuan[9], and on December 25, 2013, the Chinese Court ordered that the Topoint Group be placed into restructuring proceedings, which "will bring an opportunity for the company to survive again, which is feasible and necessary." See, Civil Ruling of the Chinese Court, 2014 No. Jiahaipozidi No. 4 (the "**Chinese Bankruptcy Application Order**"), a copy of which is annexed hereto as Exhibit "B." The Chinese Bankruptcy Application Order ordered that for purposes of merging and restructuring their affairs, each of the four (4) entities in the Topoint Group would be "deemed as one legal subject," similar to the concept of substantive consolidation in United States bankruptcy cases. See, Exhibit "B."

14. On December 25, 2013, the Chinese Court entered an order appointing the Bankruptcy Administrator and enumerating the duties and obligations of the Bankruptcy Administrator vis-à-vis the restructuring of the Topoint Group in the Chinese Proceeding (the "**Chinese Appointment Order**"), which duties and obligations include:

---

[7] Id.

[8] Id.

[9] Equivalent to approximately US$18.1 million.

(a) Taking over the assets, stamps, account books, and documents of the Topoint Group;

(b) Investigating the financial status of the Topoint Group and preparing financial status reports;

(c) Deciding internal management affairs of the Topoint Group;

(d) Deciding the daily expenditures and other necessary expenditures;

(e) Deciding whether to continue or cease the business operations of the Topoint Group;

(f) Managing or disposing of the Topoint Group's assets;

(g) Participating in litigation, arbitration, or other legal proceedings as may be necessary on behalf of the Topoint Group;

(h) Proposing to convene meetings of the members of the Topoint Group; and

(i) Such other duties that the Chinese Court shall consider to be performed by the Topoint Group.

A copy of the Chinese Appointment Order is annexed hereto as Exhibit "C."

15. In addition to the above duties and obligations, on June 30, 2014, the Chinese Court entered an order specifically authorizing the Bankruptcy Administrator to commence proceedings in the United States under Chapter 15 of the Bankruptcy Code, "and to take such steps arising in connection therewith that the Bankruptcy Administrator may consider to be appropriate." See, Award of the Chinese Court, 2014 No. Jiahaipozidi No. 1-3 (the "**Chapter 15 Authorization Order**"), a copy of which is annexed hereto as Exhibit "D."

16. The Bankruptcy Administrator has commenced this Chapter 15 case to ensure that certain orders of the Chinese Court, particularly the Chinese Appointment Order and Chapter 15

8

Authorization Order, are enforced in the United States. The relief requested herein will ensure the fair and efficient administration of the Chinese Proceeding, as made applicable in the United States.

### III. RELIEF REQUESTED AND BASIS THEREFOR

17. By this Chapter 15 Petition, the Bankruptcy Administrator seeks the following relief:

(a) Recognition pursuant to Section 1517 of the Bankruptcy Code of the Chinese Proceeding as a "foreign main proceeding" as defined in Section 1502(4) of the Bankruptcy Code;

(b) All provisional relief afforded foreign main proceedings pursuant to Section 1519 of the Bankruptcy Code immediately upon the filing of the Chapter 15 Petition, including, without limitation, such relief as set forth in Section 1519(a)(3) (as more fully set forth in Paragraph 27, herein);

(c) All relief afforded foreign main proceedings automatically upon recognition, pursuant to Section 1520 of the Bankruptcy Code; or in the alternative, if not as of right under Section 1520 of the Bankruptcy Code, then pursuant to Sections 1521, 1507, and 105(a) of the Bankruptcy Code, as applicable, including, without limitation, a stay of the commencement or continuation of any individual action or proceeding concerning the Debtors' assets, rights, obligations, or liabilities, including the US Assets;

(d) Enforcement of the Chinese Appointment Order pursuant to Sections 1521(a)(7), 1507, and 105(a) of the Bankruptcy Code;

(e) Such other and further relief as is appropriate and just under the circumstances.

A. **This Case Concerns a "Foreign Proceeding"**

18. Chapter 15 of the Bankruptcy Code authorizes a "foreign representative" appointed in a "foreign proceeding" to seek recognition of that foreign proceeding by filing a petition in the United States Bankruptcy Court. See, 11 U.S.C. § 1501, *et seq.*; In re Koreag Controle et Revision S.A., 961 F.2d 341, 348 (2d Cir. 1992), cert. denied, 506 U.S. 865 (1992). 11 U.S.C. § 101(23) provides, in pertinent part:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of restructuring or liquidation.

11 U.S.C. § 101(23).

19. The Chinese Proceeding is entitled to recognition under Section 1517 of the Bankruptcy Code by virtue of (i) the Chinese Proceeding is a foreign proceeding within the meaning of Section 101(23) of the Bankruptcy Code, and is a foreign main proceeding within the meaning of Section 1502(4) of the Bankruptcy Code as the Chinese Proceeding is pending where the Debtors have their center of main interest[10]; (ii) the Bankruptcy Administrator is a foreign representative within the meaning of 101(24) of the Bankruptcy Code; and (iii) the Chapter 15 Petition meets the requirements of Section 1515 of the Bankruptcy Code.

20. Granting recognition would not contravene the public policy of the United States, as prohibited by Section 1506 of the Bankruptcy Code. To the contrary, recognition of the Chinese Proceeding will promote the United States policy of respecting foreign proceedings as

---

[10] Each of the Debtors is incorporated and registered to do business in the PRC, and maintain their principal offices in the PRC. Accordingly, and pursuant to 11 U.S.C. § 1516(c), the Debtors are entitled to the presumption that the PRC constitutes the center of main interest of the Debtors.

10

set forth in, *inter alia*, Sections 1501(a) and 1508 of the Bankruptcy Code, and further cooperation between global courts to the maximum extent possible, as mandated by Section 1525(a) of the Bankruptcy Code. The Bankruptcy Administrator therefore submits that the conditions for recognition of the Chinese Proceeding under Section 1517 of the Bankruptcy Code have been satisfied.

**B.    The Bankruptcy Administrator is a "Body" and "Foreign Representative"**

21.    The Bankruptcy Administrator consists of the court-appointed 23-person "liquidation team" of Topoint, as per the Chinese Appointment Order. The individuals comprising the Bankruptcy Administrator body are primarily government officials representing local governments as well as governmental agencies. The Bankruptcy Administrator falls within the definition of a "body" as such term is used in Section 101(24) of the Bankruptcy Code. A "foreign representative" is defined as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding

11 U.S.C. § 101(24). The Chinese Appointment Order makes clear that the Bankruptcy Administrator is a "foreign representative" within the meaning of Section 101(24) of the Bankruptcy Code by virtue of its appointment as Bankruptcy Administrator in the Chinese Proceeding, pursuant to applicable Chinese Bankruptcy Law. Moreover, the Chapter 15 Authorization Order specifically authorizes the Bankruptcy Administrator to seek relief in the United States under Chapter 15 of the Bankruptcy Code in its capacity as a "foreign representative."

C.   **This Case Was Properly Commenced**

22.   This Chapter 15 case was properly commenced in accordance with Sections 1504 and 1515 of the Bankruptcy Code by the filing of this Chapter 15 Petition under Section 1515(a), accompanied by all documents and information required by Sections 1515(b) and (c), including, but not limited to: (i) certified copies (under seal) of the (a) Chinese Bankruptcy Application Order, (b) Chinese Appointment Order, and (c) Chapter 15 Authorization Order; and (ii) a statement identifying all "foreign proceedings" with respect to the Topoint Group that are known to the Bankruptcy Administrator. Accordingly, the requirements of Section 1515 of the Bankruptcy Code have been met.

D.   **The Provisional Relief Requested in This Petition is Expressly Permitted Under 11 U.S.C. §§ 1519(a) and 1521(a) and (b) and is Necessary in Order to Prevent the Dissipation of the Debtors' Assets**

23.   Section 1519(a) of the Bankruptcy Code permits the Court to grant "relief of a provisional nature" from the time of filing of a petition for recognition until the Court rules on that petition, where such relief is "urgently needed to protect the assets of the debtor or the interest of the creditors," including:

(a)   Staying execution against the debtor's assets;

(b)   Entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representatives in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

(c)   Any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

See, 11 U.S.C. § 1519(a).

12

24. Section 1521(a) of the Bankruptcy Code provides, in pertinent part:

(a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including—

(1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520 (a);

(2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520 (a);

(3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520 (a);

(4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

(5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;

(6) extending relief granted under section 1519 (a); and

(7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724 (a).

11 U.S.C. § 1521(a).

25. As set forth in the Ou Declaration, certain of the US Assets may be subject to liens, claims, or interests available to creditors. Maintenance of the *status quo* and the protection and preservation of the US Assets for the benefit of the Debtors' estates during reorganization is

13

essential to ensuring the integrity of the restructuring process under the laws of the PRC, and providing for fair and equitable treatment of the Topoint Group's creditors all over the world.[11]

26. Accordingly, the Bankruptcy Administrator respectfully submits that an immediate order, pursuant to 11 U.S.C. § 1519(a)(2), entrusting the administration and realization of the US Assets to the Bankruptcy Administrator, is necessary in order to protect and preserve the value of the US Assets that, by their nature or because of other circumstances, are "otherwise in jeopardy."

27. Based on the foregoing, and upon the representations in the Ou Declaration, the Bankruptcy Administrator respectfully requests that, upon the filing of the Chapter 15 Petition, the Court enter an Order that will remain in effect until a decision is rendered by the Court on the issue of recognition:

(a) Pursuant to 11 U.S.C. § 1519(a)(1), staying execution and any other acts against the Debtors' property and assets in the United States including, without limitation, the US Assets, and enforcement of any judicial, quasi-judicial, administrative or regulatory judgment, assessment, order, arbitration award, or lien against any of the Debtors or their property, except by or with the written consent of the Bankruptcy Administrator;

(b) Pursuant to 11 U.S.C. § 1519(a)(2), entrusting to the Bankruptcy Administrator the administration and realization of all of the Debtors' property and assets (including the US Assets); and specifically, authorizing the Bankruptcy Administrator, through its designated agents, to enter upon the premises where the Debtors' US Assets may be located (including, without limitation, the Warehouse), inspect and inventory the Solar Panels and any

---

[11] Upon information and belief, the Topoint Group has approximately 600 employee and 90 non-employee creditors worldwide.

related assets, and to prepare the US Assets for orderly disposition in accordance with the direction of the Chinese Court in the Chinese Proceeding;

(c) Pursuant to 11 U.S.C. § 1519(a)(3) and 1521(a)(3), suspending the right of and enjoining any party other than the Bankruptcy Administrator to transfer, encumber, or otherwise dispose of any property or assets of the Debtors, including, without limitation, the US Assets, except with the written consent of the Bankruptcy Administrator;

(d) Pursuant to 11 U.S.C. § 1519(a)(3) and 1521(a)(4), authorizing the Bankruptcy Administrator to take such discovery as may be necessary and appropriate in connection with the administration and realization of all of the Debtors' property and assets, including, without limitation, providing for the examination of witnesses, taking of evidence and delivery of information concerning the Debtors' assets, affairs, rights, obligations and liabilities, including the US Assets.

28. The discovery sought is necessary in order to enable the Bankruptcy Administrator to understand the full extent of the status and location of all property and assets of the Debtors located in the United States, and to enable the Bankruptcy Administrator to seek recovery thereof in a timely manner.

29. As set forth in the Ou Declaration, the Bankruptcy Administrator believes that time is of the essence in obtaining the relief sought herein. Specifically, the Chinese Court has ordered, pursuant to the laws of the PRC, that the ongoing reorganization process in the Chinese Proceeding shall be completed no later than September 25, 2014. Potential bidders that are interested in bidding on assets in connection with the reorganization of the Topoint Group have been required to submit their bids no later than August 10, 2014. It would be in the best interests of the Debtors, as well as all of their creditors, if the value of the Solar Panels stored in the

Warehouse could be taken into account with respect to the interested parties' total offering price for the subject assets.

30. Pursuant to 11 U.S.C. § 1521(a), the Bankruptcy Administrator also requests that the relief referred to in the foregoing Paragraph 27, above, commencing upon the filing of this Chapter 15 Petition, remain in effect after the Court's entry of an order recognizing the Chinese Proceeding.

31. Such relief will continue to be appropriate upon recognition of the Chinese Proceeding because (i) such relief is "necessary to effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interest of the creditors," as set forth in 11 U.S.C. § 1521(a); (ii) Section 1521(a)(6) of the Bankruptcy Code specifically authorizes the Court's entry of an order "extending relief granted under section 1519(a)"; and (iii) all such relief is specifically authorized by Section 1521(a)(2)-(5) of the Bankruptcy Code.

32. In addition, the Bankruptcy Administrators respectfully request that upon recognition of the Chinese Proceeding, the Court entrust the distribution of all of the US Assets to the Bankruptcy Administrator, as expressly permitted under 11 U.S.C. § 1521(b).

## IV. CONCLUSION

33. The Bankruptcy Administrator, in its capacity as court-appointed Bankruptcy Administrator of the Topoint Group in the Chinese Proceeding, is entitled to entry of an order recognizing the Chinese Proceeding as a "foreign main proceeding" and recognizing the Bankruptcy Administrator as a "foreign representative" of the Topoint Group as a matter of law because all of the statutory elements for recognition of the Chinese Proceeding under Chapter 15 of the Bankruptcy Code have been satisfied. Specifically:

(a) The Chinese Proceeding is a foreign main proceeding under 11 U.S.C. § 1502(4);

  (b)  Recognition of the Chinese Proceeding would not be contrary to United States public policy under 11 U.S.C. § 1506;

  (c)  The Bankruptcy Administrator is a "body" and a "foreign representative" authorized to represent the Topoint Group in connection with the Chinese Proceeding and this proceeding; and

  (d)  The Bankruptcy Administrator has complied with all of the requirements of 11 U.S.C. § 1515 and Bankruptcy Rule 2002.

34.  Since, as demonstrated above, the requirements of 11 U.S.C. §§ 1519(a)(2), 1521(a)(5) and 1521(b) are met, the Bankruptcy Administrator should be entrusted with (i) the administration and realization of the Debtors' property and assets located in the United States, including the US Assets; and (ii) the distribution of the Debtors' property and assets located in the United States, including the US Assets.

35.  No prior application for the relief sought herein has been made or granted in this, or any other court.

      WHEREFORE, the Bankruptcy Administrator respectfully requests that this Court grant the Chapter 15 Petition and enter an Order, substantially in the form of the proposed Order Granting Recognition and Related Relief annexed hereto, together with such other and further relief as may be just, equitable and proper.

Dated: Haddonfield, New Jersey  
        July 16, 2014

ARCHER & GREINER  
A Professional Corporation

  /s/ Stephen M. Packman        .  
Stephen M. Packman (NJ Bar No. 54475)  
Douglas G. Leney (NJ Bar No. 07-3423)  
One Centennial Square  
Haddonfield, NJ 08033  
Tel: (856) 795-2121  
Fax: (856) 795-0574  
spackman@archerlaw.com  
dleney@archerlaw.com

-and-

NGUYEN AND CHEN, LLP  
Fan Chen (*Admission pro hac vice pending*)  
11200 Westheimer Road, Suite 120  
Houston, TX 77042  
Tel: (832) 767-0339  
Fax: (832) 767-0669  
fchen@nguyen-chen.com  
*Attorneys for the Liquidation team of Zhejiang Topoint Photovoltaic Co., Ltd., as Bankruptcy Administrator of the Debtors and the Topoint Group*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Jiangang Ou declares as follows:

I am affiliated with the law firm of Nguyen and Chen, LLP and have been appointed as Authorized Designee and Signatory of the Bankruptcy Administrator of the Topoint Group. I have full authority to verify the foregoing Verified Petition Pursuant to 11 U.S.C. §§ 105(a), 1504, 1515, 1517, 1519, 1520, and 1521 for Entry of an Order Recognizing Foreign Main Proceeding and Granting Further Relief and Additional Assistance (the "Petition"). I have read the foregoing Petition, and am informed and do believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 7/16/2014

_____
Jiangang Ou,
Authorized Designee and Signatory of the
Bankruptcy Administrator of the Topoint
Group

11285580v3